IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Colfor Manufacturing, Inc.
461 Knox Court
Minerva, Ohio 44657;

Zurich American Insurance Company
1299 Zurich Way
Schaumburg, Illinois 60196;

XL Insurance America, Inc.
190 S. LaSalle St, Suite 3900
Chicago, Illinois 60603;

Westport Insurance Corporation
5200 Metcalf Avenue
Overland Park, Kansas 66202;

Interstate Fire & Casualty Company
2842 Lent Road
Apopka, Florida 32712;

HDI Global Insurance Company
161 North Clark Street, 48th Floor
Chicago, Illinois 60601;

National Fire & Marine Insurance Company
1314 Douglas Street, Suite 1400
Omaha, Nebraska  68102;

General Security Indemnity Company of
Arizona
28 Liberty Plaza, Suite 5400
New York, New York 10005;

ACE American Insurance Company
436 Walnut Street
Philadelphia, Pennsylvania 19106;

HDI Global Specialty SE - UK f/k/a Inter-
Hannover
Podbielskistrasse 396
30659 Hannover, Germany;

CASE NO:

JUDGE:

**JURY DEMAND ENDORSED
HEREON**

and

Great Lakes Insurance SE
Koeniginstraße 107
80802 Munich, Germany

                                        Plaintiffs,

            v.

Macrodyne Technologies, Inc.
311 Connie Crescent
Concord, Ontario L4K 5R2, Canada;

Bosch Rexroth Corporation
14001 South Lakes Drive
Charlotte, North Carolina 28273;

MT Press Services Inc.
311 Connie Crescent
Concord, Ontario L4K 5R2, Canada;

Lee Industrial Contracting
631 Cesar E. Chavez Avenue
Pontiac, Michigan 48342;

and

John Does, numbered 1 through 99

                                        Defendants.

## COMPLAINT

Now come the above-named Plaintiffs, by and through their attorneys identified below,

and for their Complaint set forth their causes of action against the above-named Defendants, and

allege and show to the Court as follows:

1.      Plaintiff, Colfor Manufacturing, Inc. (hereinafter, "Plaintiff Colfor"), is, and at all

relevant times was, a Delaware corporation with its principal place of business in Ohio.

2.      Plaintiff Zurich American Insurance Company (hereinafter "ZAIC"), as lead

underwriter of a market of insurers in connection with this matter, is a New York corporation with

a principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.  It is authorized, and was so authorized at relevant times hereto, to transact business and has transacted business in Ohio.

3.     Plaintiff XL Insurance America, Inc. as one of the market insurers in connection with this matter is, and was at all times relevant to this matter, an insurance company organized and existing under the laws of Delaware with a principal place of business at 190 S. LaSalle St, Suite 3900, Chicago, Illinois 60603.

4.     Plaintiff Westport Insurance Corporation as one of the market insurers in connection with this matter is, and was at all times relevant to this matter, an insurance company organized and existing under the laws of the state of Missouri with a principal place of business at 5200 Metcalf Avenue, Overland Park, KS 66202.

5.     Plaintiff Interstate Fire & Casualty Company as one of the market insurers in connection with this matter is, and was at all times relevant to this matter, an insurance company organized and existing under the laws of the state of Illinois with a principal place of business at 2842 Lent Road, Apopka, FL 32712.

6.     Plaintiff HDI Global Insurance Company as one of the market insurers in connection with this matter is, and was at all times relevant to this matter, an insurance company organized and existing under the laws of Illinois with a principal place of business at 161 North Clark Street, 48th Floor, Chicago, Illinois 60601.

7.     Plaintiff National Fire & Marine Insurance Company as one of the market insurers in connection with this matter is, and was at all times relevant to this matter, an insurance company organized and existing under the laws of Nebraska with a principal place of business at 1314 Douglas Street, Suite 1400, Omaha, Nebraska  68102.

8.      Plaintiff General Security Indemnity Company of Arizona as one of the market insurers in connection with this matter is, and was at all times relevant to this matter, an insurance company organized and existing under the laws of Arizona with a principal place of business at 28 Liberty Plaza, Suite 5400, New York, New York 10005.

9.      Plaintiff ACE American Insurance Company as one of the market insurers in connection with this matter is, and was at all times relevant to this matter, an insurance company organized and existing under the laws of Pennsylvania with a principal place of business at 436 Walnut Street, Philadelphia, Pennsylvania 19106.

10.      Plaintiff HDI Global Specialty SE - UK f/k/a Inter-Hanover as one of the market insurers in connection with this matter is, and was at all times relevant to this matter, an insurance company organized and existing as a foreign organization with a principal place of business at Podbielskistrasse 396, 30659 Hannover, Germany.

11.      Plaintiff Great Lakes Insurance SE as one of the market insurers in connection with this matter is, and was at all times relevant to this matter, an insurance company organized and existing as a foreign organization with a principal place of business at Koeniginstraße 107, 80802 Munich, Germany.

12.      Plaintiffs Zurich American Insurance Company, XL Insurance Company, Westport Insurance Corporation, Interstate Fire & Casualty Company, HDI Global Insurance Company, National Fire & Marine Insurance Company, General Indemnity Insurance Company of Arizona, ACE America Insurance Company, and HDI Global Specialty SE - UK f/k/a Inter-Hanover, and Great Lakes Insurance SE are hereinafter collectively referred to as the Market Insurer Plaintiffs.

13.      Plaintiff Colfor and the Market Insurer Plaintiffs are hereinafter collectively referred to as the Plaintiffs.

14.     At all times relevant hereto, the Market Insurer Plaintiffs, pursuant to a policy of insurance, insured Plaintiff Colfor and its related entities against loss and damages as a result of fire and other casualty events including, but not limited to, loss and damage to real and business personal property, equipment, furnishings, fixtures, and loss of income and other costs and expenses incurred as a result  of disruption to its business operations as a result of fire and other casualty events, including all aforesaid losses and damages as a result of the fire which forms the basis of this action.

15.     Defendant Macrodyne Technologies, Inc. (hereinafter "Defendant Macrodyne"), is, and at all times was, a  foreign company organized and existing under the laws of the Province of Ontario, Canada with a headquarters located at 311 Connie Crescent, Concord, Ontario L4K 5R2, Canada.  Defendant Macrodyne transacted, and was transacting, business in the State of Ohio directly with respect to the allegations in this Complaint.

16.     Defendant Bosch Rexroth Corporation, (hereinafter "Defendant Bosch"), is, and at all times was, a foreign corporation organized and existing under the laws of Germany with a headquarters located at Zum EisengieBer, 97816 Lohr am Main, Germany and authorized to transact, and transacting, business in the State of Ohio with a United States headquarters located at 14001 South Lakes Drive, Charlotte, North Carolina 28273.

17.     Defendant MT Press Services Inc. (hereinafter "Defendant MT Press"), is, and at all times was, a company organized and existing under the laws of the Province of Ontario, Canada with a headquarters located at 311 Connie Crescent, Concord, Ontario L4K 5R2, Canada. Defendant MT Press transacted, and was transacting, business in the State of Ohio directly with respect to the allegations in this Complaint.

18. Defendant Lee Industrial Contracting (hereinafter "Defendant Lee Contracting"), is, and at all times was, a company organized and existing under the laws of the State of Michigan with a principal place of business located at 631 Cesar E. Chavez Avenue, Pontiac, Michigan 48342 and authorized to transact, and transacting, business in the State of Ohio.

19. Defendants John Does, numbered 1 through 99 (hereinafter collectively referred to as the "John Doe Defendants"), are persons and/or entities who could not be identified or discovered by Plaintiffs prior to suit despite reasonable diligence and investigation.

20. At all times relevant hereto, Defendants Macrodyne, Bosch, MT Press, Lee Contracting and John Does 1 through 99 acted on their own, and by and through their agents, employees, and workmen.

## VENUE AND JURISDICTION

21. This litigation arises out of a fire causing catastrophic damage which occurred at Plaintiff Colfor's metal forming Plant located at 3255 Alliance Road, NW, Malvern, Ohio and relates to property damage and losses sustained by Plaintiff Colfor, and by the Market Insurer Plaintiffs as subrogees of Plaintiff Colfor related to that fire in Ohio.

22. This Court has jurisdiction over the subject-matter of this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and is between citizens of different States and/or citizens of a State and citizens of a foreign state.

23. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claims occurred in this judicial district.

## STATEMENT OF FACTS

24. Plaintiff Colfor is a company that designs, engineers, manufactures, and supplies driveline and metal forming products for various industries, including the automotive industry.

25.     At all relevant times, Plaintiff Colfor owned a metal forming Plant located at 3255 Alliance Road, N.W., Malvern, Ohio 44644 (the "Malvern Plant").

26.     Defendant Macrodyne designs and manufactures heavy-duty hydraulic presses, which include fully-automated hydraulic press lines and equipment.

27.     In 2016, Plaintiff Colfor purchased a metal forming hydraulic draw press from Defendant Macrodyne for use in its Malvern Plant, referred to as "Press 761".

28.     Press 761 was a hydraulic, vertically-acting, down stroking, monolithic frame style draw press that was used to make truck axles.

29.     Defendant Macrodyne designed, manufactured, constructed and supplied Press 761 for Plaintiff Colfor to be used at the Malvern Plant.

30.     As part of design, manufacture and construction of Press 761, Defendant Macrodyne used a hydraulic system made by Defendant Bosch.

31.     Defendant Bosch designs and manufactures hydraulic systems and related components.

32.     The hydraulic system in Press 761 had a primary power unit that was equipped with continuous filtering and an automatic, temperature-controlled cooling circuit.

33.     The hydraulic system in Press 761 was powered by three separate pressurized, compensated, variable-displacement piston pump motors used for pressing and fast return assist functions.

34.     Press 761 was designed for a concentrically loaded draw application, also known as ironing, with warm forming part temperatures up to 1300 degrees Fahrenheit.

35.     Press 761 was manufactured, constructed and mechanically assembled by Defendant Macrodyne at its plant, and then disassembled by Defendant Macrodyne for shipment

and delivery to Plaintiff Colfor's Malvern Plant in Ohio.

36.     The disassembled component parts of Press 761 were shipped by Defendant Macrodyne from Canada to Plaintiff Colfor's Malvern Plant in Ohio.

37.     Plaintiff Colfor hired Defendant Lee Contracting to reassemble and install Press 761 at Plaintiff Colfor's Malvern Plant.

38.     Defendant Lee Contracting assembled and installed Press 761 at Plaintiff Colfor's Malvern Plant.

39.     Defendant Macrodyne and Defendant MT Press supervised and consulted on the assembly and installation, start-up, commissioning and testing of Press 761 which included, but was not limited to conducting IO checks, hydraulic calibrations and debugging of the program functions for Press 761.

40.     Defendant Macrodyne and Defendant MT Press assured Plaintiff Colfor that all press functions were working, operating, and guaranteed that Press 761 was not defective with respect to workmanship and materials.

41.     Thereafter, Plaintiff Colfor used Press 761 to make axle tubes and in doing so received continuing consultation, advice and services from Defendant Macrodyne and Defendant MT Press regarding the use, operation, maintenance and service of Press 761.

42.     The hydraulic system for Press 761 circulates hydraulic fluid into and out of a hydraulic fluid reservoir tank by way of a piston pump motor that pumped the hydraulic fluid through the connection assembly of Press 761.

43.     The connection assembly consisted of a round connection nipple on the lower part of the hydraulic fluid reservoir which provides the connection to the piston pump.

44.     The reservoir tank, piston pump motor, and connection assembly motor were all positioned atop of the "crown" of Press 761.

45.     On September 20, 2020, a catastrophic fire occurred at and around Press 761 at Plaintiff Colfor's Malvern Plant.

46.     The fire was caused by a malfunction, and in particular a malfunction in the design, manufacture and/or assembly of the connection assembly which allowed hydraulic fluid to leak from the connection assembly, including the braided hoses and connectors, that  were part of the hydraulic system of Press 761.

47.     When the failure occurred, a large amount of hydraulic fluid escaped and cascaded down to the lower portion of Press 761.

48.     The escaped hydraulic fluid landed, in part, on a cooling conveyor below the crown and was ignited by the hot steel axle tube preforms that were resting on the rack of Press 761.

49.      The fire, and ensuing flames, heat, and smoke, originated at and around the location of Press 761 and spread throughout the Malvern Plant causing extensive damage to Press 761, and to other equipment and property throughout the Malvern Plant, as well as catastrophic losses due to disruption in operations.

50.     The malfunction was a result of the improper and inadequate design, manufacture and assembly of Press 761 included, but was not limited to, a lack of adequate and proper protection within or around the connection assembly and hydraulic fluid recirculating system.

51.     The improper and inadequate design, manufacture and assembly of Press 761 allowed the connection assembly hydraulic fluid to leak.

52.     The improper and inadequate design, manufacture and assembly of Press 761 failed to provide for containment in the event of a hydraulic fluid leak and thereby allowed the leaking

hydraulic fluid to come into contact with an ignition source, and in particular the hot steel axle tube preforms.

53.     The improper and inadequate design, manufacture and assembly of Press 761 failed to provide for a system to contain or suppress the fire.

54.     The John Doe Defendants are persons and/or entities that were involved in designing, manufacturing, installing, servicing, consulting or otherwise providing services related to defect components and appurtenances of Press 761, and/or improper subcontracting work related to Press 761, whose names are unknown to Plaintiffs and not discoverable to Plaintiffs without the litigation discovery process.

55.     The damages and losses stemming from the fire were due solely to the acts, omissions, negligence, carelessness and other culpable conduct of the Defendants, and were due in no manner whatsoever to any act or failure to act on part of Plaintiffs.

56.     From the time of its installation until the time of the fire, Press 761 was used by Plaintiff Colfor as intended and in a proper and correct manner.

57.     Plaintiff Colfor did not do anything that caused the fire or the resulting damages and losses.

58.     The fire and resulting damages and losses would not have occurred absent the aforesaid malfunction of Press 761, which was the direct and proximate result of the inadequate design, manufacture, construction and supply by Defendants Macrodyne, Bosch, MT Press, and Lee Contracting in a defective condition with a connection assembly that catastrophically leaked a dangerous amount of combustible hydraulic fluid that ignited and caused the fire.

59.     As a result of the fire, and the ensuing flames, smoke, and heat, Plaintiff Colfor suffered damages and losses related to Plaintiff Colfor's real and business personal property, as

well as losses, costs, expenses and business interruption that together total an amount well in excess of $83,000,000.00.

60.     Collectively, pursuant to the policy of insurance issued by the Market Insurer Plaintiffs to Plaintiff Colfor and its subsidiaries, the Market Insurer Plaintiffs have paid Colfor, to date, an amount in excess of $83,000,000.00 for the aforesaid losses and damages sustained by Plaintiff Colfor, with additional payments anticipated, and, as a result, the Market Insurer Plaintiffs are legally, contractually and equitably subrogated to the rights, remedies and claims of Plaintiff Colfor against any and all third parties responsible for the damages and losses stated herein, including the Defendants.

61.     Plaintiff Colfor suffered losses and damages in addition to what was paid to Plaintiff Colfor by the Market Insurer Plaintiffs, in an amount at or above $1,000,000.00.

**COUNT I**
**STRICT LIABILITY – DESIGN DEFECT (ORC §2307.75, et seq.)**
**ALL PLAINTIFFS V. DEFENDANT MACRODYNE**

62.     Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

63.     Press 761 was not reasonably safe for its intended use and was defective with respect to its design pursuant to ORC §2307.75, et seq.

64.     The fire and ensuing damages at Plaintiff Colfor's Malvern Plant were a direct and proximate result of the defects in Press 761.

65.     Defendant Macrodyne is strictly liable to Plaintiffs as a result of the defects in Press 761 which directly and proximately caused the damages sustained by the Plaintiffs in an amount to be determined at trial.

## COUNT II
## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT (ORC §2307.74, et seq.)
## ALL PLAINTIFFS V. DEFENDANT MACRODYNE

66.     Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

67.     Press 761 was not reasonably safe for its intended use and was defective with respect to its manufacture and construction pursuant to ORC §2307.74, et seq.

68.     The fire and ensuing damages at Plaintiff Colfor's Malvern Plant was a direct and proximate result of the defects in Press 761.

69.     Defendant Macrodyne is strictly liable to Plaintiffs as a result of the defects in Press 761 which directly and proximately caused the damages sustained by the Plaintiffs in an amount to be determined at trial.

## COUNT III
## STRICT LIABILITY – FAILURE TO WARN (ORC §2307.76, et seq.)
## ALL PLAINTIFFS V. DEFENDANT MACRODYNE

70.     Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

71.     Press 761 was not reasonably safe for its intended use and was defective due to its lack of appropriate and necessary warnings pursuant to ORC §2307.76, et seq.

72.     As a direct and proximate result of the aforementioned defects, Defendant Macrodyne caused damages and losses to Plaintiffs.

73.     Defendant Macrodyne is strictly liable to Plaintiffs for distributing a defective product that lacked appropriate and necessary warnings that directly and proximately caused the damages and losses sustained by Plaintiffs in an amount to be determined at trial.

**COUNT IV**
**STRICT PRODUCT LIABILITY: DEFECT DUE TO NONCONFORMANCE WITH**
**REPRESENTATION (ORC §2307.77, et seq.)**
**ALL PLAINTIFFS V. DEFENDANT MACRODYNE**

74.     Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

75.     Press 761 was not reasonably safe for its intended use and was defective with respect to its nonconformance with representations made by Defendant Macrodyne pursuant to ORC §2307.77, et seq.

76.     Defendant Macrodyne expected and intended Press 761 to reach the user, Plaintiff Colfor, in the condition in which Press 761 was sold, supplied and delivered to Plaintiff Colfor.

77.     Defendant Macrodyne represented to Plaintiff Colfor that Press 761 was safe, effective and fit for its intended use at Plaintiff Colfor's Malvern Plant.

78.     Plaintiff Colfor reasonably and justifiably relied upon Defendant Macrodyne's representations that the product was safe for its intended use at Plaintiff Colfor's Malvern Plant, and that Press 761 would conform to Defendant Macrodyne's representations regarding the character and quality of Press 761 for such use.

79.     Defendant Macrodyne is strictly liable to Plaintiffs for the damages and losses sustained by the Plaintiffs as a direct and proximate result of Defendant Macrodyne's noncompliance with its representations in an amount to be determined at trial.

**COUNT V – BREACH OF CONTRACT**
**ALL PLAINTIFFS V. DEFENDANT MACRODYNE**

80.     Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

81.     At all times relevant and material hereto, Defendant Macrodyne entered into a

valid, enforceable contract with Plaintiff Colfor to provide consulting and other related services regarding the sale, installation, start-up and operation of Press 761.

82.     Defendant Macrodyne materially breached its contractual obligations to Plaintiff Colfor by failing to fulfill its obligations in a good and workmanlike manner, and failing to meet the specific terms of the contact.

83.     Defendant Macrodyne materially breached its contractual obligations, and as a result, directly and proximately caused the fire and ensuing damages, expenses and losses, including special damages, in an amount to be determined at trial.

## COUNT VI – NEGLIGENCE
## ALL PLAINTIFFS V. DEFENDANT MACRODYNE

84.     Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

85.     At all times relevant and material hereto, Defendant Macrodyne held itself out as having the requisite knowledge and expertise in the design, manufacturing, installation and servicing of hydraulic presses, as well as the supply and/or integration of ancillary press line equipment, and undertook a duty to perform said services in a safe and workmanlike manner consistent with all appropriate standards and codes.

86.     Defendant Macrodyne owed a duty of care to Plaintiffs in its design, manufacturing, installation and servicing of hydraulic presses, as well as the supply and/or integration of ancillary press line equipment.

87.     Defendant Macrodyne breached its duty to Plaintiff Colfor by failing to exercise reasonable care in one or more of the following ways:

    a.     marketing a hydraulic draw press, and related components and appurtenances, which it knew or should have known created an unreasonable risk of fire;

b.      selling, installing and servicing a hydraulic draw press, and related components and appurtenances, which it knew or should have known created an unreasonable risk of fire;

c.      failing to identify before, during or after the installation of the hydraulic draw press, and related components and appurtenances, that it created an unreasonable risk of fire;

d.      improperly installing the components of the hydraulic draw press, and related components and appurtenances;

e.      failing to correct the improper installation of such components and appurtenances during subsequent maintenance and inspections;

f.      failing to properly train and oversee its employees regarding the proper means, methods and materials used for the installation of Press 761, and related components and appurtenances;

g.      failing to warn at the time of sale, and thereafter, that the connection assembly could malfunction and catastrophically leak hydraulic fluid in this manner with the potential to ignite and cause the fire;

h.      failing to warn at the time of sale, and thereafter, that the hydraulic system, and related components and appurtenances, could not adequately handle the hydraulic fluid to avoid a catastrophic leak;

i.      failing to assess the risks and/or analyze the hazards of positioning and mounting the reservoir, pump and connection assembly in the crown on top of the press above heated parts and communicate those risks and/or hazards to Colfor;

j.      misrepresenting that the hydraulic draw press, and related components and appurtenances, included all elements necessary to make it safe;

k.      misrepresenting that the hydraulic draw press, and related components and appurtenances, as installed was safe and fit for use;

l.      misrepresenting that the hydraulic draw press, and related components and appurtenances, could be safely operated in the setup and form it was in at the Malvern Plant; and

m.      being otherwise negligent and failing to act as a reasonable-prudent party would under the same or similar circumstances.

88.    Each of the above referenced acts and omissions, separately or in combination with others, constitutes negligence on the part of the Defendant Macrodyne and is a direct and proximate cause of the damages and losses suffered by Plaintiffs in an amount to be determined at trial.

**COUNT VII**
**STRICT LIABILITY – DESIGN DEFECT (ORC §2307.75, et seq.)**
**ALL PLAINTIFFS V. DEFENDANT BOSCH**

89.    Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

90.    The hydraulic system for Press 761 was not reasonably safe for its intended use and was defective with respect to its design pursuant to ORC §2307.75, et seq.

91.    The fire and ensuing damages at Plaintiff Colfor's Malvern Plant was a direct and proximate result of the defects in Press 761.

92.    Defendant Bosch is strictly liable to Plaintiffs as a result of the defects in Press 761 which directly and proximately caused the damages sustained by Plaintiffs in an amount to be determined at trial.

**COUNT VIII**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT (ORC §2307.74, et seq.)**
**ALL PLAINTIFFS V. DEFENDANT BOSCH**

93.    Plaintiffs incorporate by reference the paragraphs in this Complaint above as if fully set forth herein.

94.    The hydraulic system for Press 761 was not reasonably safe for its intended use and was defective with respect to its manufacture and construction pursuant to ORC §2307.74, et seq.

95.    The fire and ensuing damages at Plaintiff Colfor's Malvern Plant was a direct and proximate result of the aforementioned defects in Press 761.

96.    Defendant Bosch is strictly liable to Plaintiffs as a result of the defects in Press 761

which directly and proximately caused the damage sustained by the Plaintiffs in an amount to be determined at trial.

## COUNT IX
## STRICT LIABILITY – FAILURE TO WARN (ORC §2307.76, et seq.)
## ALL PLAINTIFFS V. DEFENDANT BOSCH

97.     Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

98.     The hydraulic system for Press 761 was not reasonably safe for its intended use and was defective due to its lack of appropriate and necessary warnings pursuant to ORC §2307.76, et seq.

99.     The fire and ensuing damages at Plaintiff's Colfor's Malvern Plant was a direct and proximate result of the defects in Press 761.

100.    Defendant Bosch is strictly liable to Plaintiffs for distributing a defective product that lacked appropriate and necessary warnings and directly and proximately caused the damages and losses sustained by Plaintiffs in an amount to be determined at trial.

## COUNT X
## STRICT PRODUCT LIABILITY: DEFECT DUE TO NONCONFORMANCE WITH
## REPRESENTATION (ORC §2307.77, et seq.)
## ALL PLAINTIFFS V. DEFENDANT BOSCH

101.    Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

102.    The hydraulic system for Press 761 was not reasonably safe for its intended use and was defective with respect to its nonconformance with representations made by Defendant Bosch pursuant to ORC §2307.77, et seq.

103.    Defendant Bosch expected and intended Press 761 to reach the user, Plaintiff Colfor, in the condition in which the product was sold.

104.    Defendant Bosch represented to Colfor that Press 761 was safe, effective and fit for intended use at Plaintiff Colfor's Malvern Plant.

105.    Plaintiff Colfor reasonably and justifiably relied upon Defendant Bosch's representations that the product was safe for its intended use at Plaintiff Colfor's Malvern Plant, and that the hydraulic system of Press 761 would conform to Defendant Bosch's representations regarding the character and quality of the hydraulic system of Press 761 for such use.

106.    Defendant Bosch is strictly liable to Plaintiffs for Defendant Bosch's noncompliance with its representations which directly and proximately caused the damages sustained by Plaintiffs in an amount to be determined at trial.

## COUNT XI – NEGLIGENCE
## ALL PLAINTIFFS V. DEFENDANT BOSCH

107.    Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

108.    At all times relevant and material hereto, Defendant Bosch held itself out as having the requisite knowledge and expertise in the design, manufacturing, and distribution of hydraulic systems, and their components, and undertook a duty to perform said services in a safe and workmanlike manner consistent with all appropriate standards and codes.

109.    Defendant Bosch breached its duty of care by failing to exercise reasonable care in the following respects:

   a.    providing a hydraulic system, and related components and appurtenances, which was unsafe and prone to failure;

   b.    failing to warn at the time of sale and thereafter that installation of its hydraulic system, and related components and appurtenances, at the Malvern Plant created an unreasonable risk of fire;

   c.    providing warnings that were misleading or deceptive;

d.      failing to provide a hydraulic system, and related components and appurtenances,  capable of timely providing evidence of dangerous hydraulic leak activity;

e.      failing to assess risks and/or analyze the hazards of positioning a hydraulic system, and related components and appurtenances,  and mounting the reservoir, pump and connection assembly in the crown on top of Press 761;

f.      misrepresenting that the hydraulic system, and related components and appurtenances, included all the elements necessary to make it safe;

g.      misrepresenting that the hydraulic system, and related components and appurtenances, as installed was safe;

h.      misrepresenting that the hydraulic system, and related components and appurtenances, could be safely operated in the setup and form it was in at the Malvern Plant; and

i.      being otherwise negligent and failing to act as a reasonable-prudent party would under the same or similar circumstances.

110.    Each of the above referenced acts and omissions, separately or in combination with others, constitutes negligence on part of the Defendant Bosch and is a direct and proximate cause of the damages suffered by Plaintiffs in an amount to be determined at trial.

## COUNT XII – BREACH OF WARRANTY
## ALL PLAINTIFFS V. DEFENDANT MACRODYNE

111.    Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

112.    Defendant Macrodyne warranted that Press 761 was merchantable, fit and safe for the ordinary and particular purpose for which the hydraulic draw press was sold, distributed, installed and/or supplied.

113.    The aforesaid warranties were breached by Defendant Macrodyne because Press 761 did not conform to representations made, was not merchantable nor fit and safe for the ordinary and particular purpose for which it was sold, distributed, installed and for the application at issue

and was not free from defect.

114.     As a direct and proximate result of the aforesaid breach of warranties, Plaintiffs sustained damages as set forth herein in an amount to be determined at trial.

## COUNT XIII – BREACH OF WARRANTY
## ALL PLAINTIFFS V. DEFENDANT BOSCH

115.     Plaintiffs incorporate by reference the paragraphs of this Complaint above and below as if fully set forth herein.

116.     Defendant Bosch warranted that its hydraulic system was merchantable, fit and safe for the ordinary and particular purpose for which the hydraulic system was sold, distributed, installed and/or supplied.

117.     The aforesaid warranties were breached by Defendant Bosch because the hydraulic system did not conform to representations made, was not merchantable nor fit and safe for the ordinary and particular purpose for which it was sold, distributed, installed and for the application at issue and was not free from defect.

118.     As a direct and proximate result of the aforesaid breach of warranties, Plaintiffs sustained damages as set forth herein in an amount to be determined at trial.

## COUNT XIV – NEGLIGENCE
## ALL PLAINTIFFS V. DEFENDANT MT PRESS

119.     Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

120.     At all times relevant and material hereto, Defendant MT Press held itself out as having the requisite knowledge and expertise in servicing, inspecting, maintaining and providing parts for hydraulic presses, and owed a duty of care to Plaintiffs and others in providing such services.

121.    Defendant MT Press breached its duty of care to Plaintiffs by failing to exercise reasonable care while conducting work in the servicing, inspecting, maintaining and providing parts for Press 761 in one or more of the following ways:

      a.    improperly servicing, inspecting, maintaining, and/or providing parts for Press 761 at the Malvern Plant;

      b.    failing to properly train their personnel to conduct the operations in question;

      c.    failing to safely and properly perform its work;

      d.    performing its work in such a manner to expose Plaintiff Colfor's property to a heightened, unreasonable risk of injury;

      e.    failing to properly monitor their personnel while conducting the operations in question;

      f.    misrepresenting that the hydraulic draw press was safe;

      g.    misrepresenting that Press 761 could be safely operated at the Malvern Plant; and

      h.    being otherwise negligent and failing to act as a reasonable-prudent party would under the same or similar circumstances.

122.    Each of the above referenced acts and omissions, separately or in combination with others, constitutes negligence on part of the Defendant MT Press and is a direct and proximate cause of the damages suffered by Plaintiffs in an amount to be determined at trial.

### COUNT XV – BREACH OF CONTRACT
### ALL PLAINTIFFS V. DEFENDANT MT PRESS

123.    Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

124.    At all times relevant and material hereto, Defendant MT Press entered into a valid, enforceable contract with Plaintiff Colfor to provide consulting and other related services regarding the sale, installation, maintenance, service, parts, start-up and operation of Press 761.

125. Defendant MT Press materially breached its contractual obligations to Plaintiff Colfor by failing to fulfill its obligations in a good and workmanlike manner, and failing to meet the specific terms of the contact.

126. Defendant MT Press materially breached its contractual obligations, and as a result, directly and proximately caused the fire and ensuing damages, expenses and losses, including special damages, in an amount to be determined at trial.

## COUNT XVI – NEGLIGENCE
## ALL PLAINTIFFS V. DEFENDANT LEE CONTRACTING

127. Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

128. At all times relevant and material hereto, Defendant Lee Contracting held itself out as having the requisite knowledge and expertise in turn-key solutions and industrial contracting, and owed a duty of care to Plaintiffs and others in providing such services.

129. Defendant Lee Contracting breached its duty of care to Plaintiffs by failing to exercise reasonable care while conducting work in the installation and erection of the Press 761 in one or more of the following ways:

    a.    improperly installing and erecting Press 761, and related components and appurtenances, at the Malvern Plant;

    b.    failing to properly train their personnel to conduct the installation and erection operations in question;

    c.    failing to safely and properly perform its work;

    d.    performing its work in such a manner to expose Plaintiff Colfor's property to a heightened, unreasonable risk of injury;

    e.    failing to properly monitor their personnel while conducting the installation operation in question;

    f.    misrepresenting that the hydraulic draw press as installed and

erected was safe;

g.    misrepresenting that Press 761, and related components and appurtenances, could be safely operated at the Malvern Plant; and

h.    being otherwise negligent and failing to act as a reasonable-prudent party would under the same or similar circumstances.

130.    Each of the above referenced acts and omissions, separately or in combination with others, constitutes negligence on part of the Defendant Lee Contracting and is a direct and proximate cause of the damages suffered by Plaintiffs in an amount to be determined at trial.

## COUNT XVII – BREACH OF CONTRACT
## ALL PLAINTIFFS V. DEENDANT LEE CONTRACTING

131.    Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

132.    At all times relevant and material hereto, Defendant Lee Contracting entered into a valid, enforceable contract with Plaintiff Colfor to provide consulting and other related services regarding the sale, installation, start-up and operation of Press 761.

133.    Defendant Lee Contracting materially breached its contractual obligations to Plaintiff Colfor by failing to fulfill its obligations in a good and workmanlike manner, and failing to meet the specific terms of the contact.

134.    Defendant Lee Contracting materially breached its contractual obligations, and as a result, directly and proximately caused the fire and ensuing damages, expenses and losses, including special damages, in an amount to be determined at trial.

## COUNT XVIII
## STRICT LIABILITY – DESIGN DEFECT (ORC §2307.75, et seq.)
## ALL PLAINTIFFS V. JOHN DOE DEFENDANTS

135.    Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

136.    Press 761 was not reasonably safe for its intended use and was defective with respect to its design pursuant to ORC §2307.75, et seq.

137.    The fire and ensuing damages at Plaintiff Colfor's Malvern Plant were a direct and proximate result of the defects in Press 761.

138.    John Doe Defendants, whose identities are currently unknown to Plaintiffs, are strictly liable to Plaintiffs as a result of the defects in Press 761 which caused the damages sustained by the Plaintiffs in an amount to be determined at trial.

**COUNT XIX**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT (ORC §2307.74, et seq.)**
**ALL PLAINTIFFS V. JOHN DOE DEFENDANTS**

139.    Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

140.    Press 761 was not reasonably safe for its intended use and was defective with respect to its manufacture and construction pursuant to ORC §2307.74, et seq.

141.    The fire and ensuing damages at Plaintiff Colfor's Malvern Plant was a direct and proximate result of the defects in Press 761.

142.    John Doe Defendants, whose identities are currently unknown to Plaintiffs, are strictly liable to Plaintiffs as a result of the defects in Press 761 which caused the damages sustained by the Plaintiffs in an amount to be determined at trial.

**COUNT XX**
**STRICT LIABILITY – FAILURE TO WARN (ORC §2307.76, et seq.)**
**ALL PLAINTIFFS V. JOHN DOE DEFENDANTS**

143.    Plaintiffs incorporate by reference the paragraphs of this Complaint above as if fully set forth herein.

144.    Press 761 was not reasonably safe for its intended use and was defective  due to its

lack of appropriate and necessary warnings pursuant to ORC §2307.76, et seq.

145.    As a direct and proximate result of the aforementioned defects, John Doe Defendants caused damages and losses to Plaintiffs.

146.    John Doe Defendants are strictly liable to Plaintiffs for distributing a defective product that lacked appropriate and necessary warnings that caused the damages and losses sustained by Plaintiffs in an amount to be determined at trial.

**COUNT XXI – NEGLIGENCE**
**ALL PLAINTIFFS V. JOHN DOE DEFENDANTS**

147.    Plaintiffs incorporate by reference the paragraphs of the Complaint above as if fully set forth herein.

148.    At all times relevant and material hereto, John Doe Defendants held themselves out as having the requisite knowledge and expertise in the design, manufacturing, installation and servicing of hydraulic presses, as well as the supply and/or integration of ancillary press line equipment, and undertook a duty to perform said services in a safe and workmanlike manner consistent with all appropriate standards and codes.

149.    John Doe Defendants owed a duty of care to Plaintiffs in their design, manufacturing, installation and servicing of hydraulic presses, as well as the supply and/or integration of ancillary press line equipment.

150.    John Doe Defendants breached their duty to Plaintiff Colfor by failing to exercise reasonable care in one or more of the following ways:

   a.    marketing a hydraulic draw press, and related components and appurtenances, which it knew or should have known created an unreasonable risk of fire;

   b.    selling, installing and servicing a hydraulic draw press, and related components and appurtenances, which it knew or should have known created an unreasonable risk of fire;

c.      failing to identify before, during or after the installation of the hydraulic draw press, and related components and appurtenances, that it created an unreasonable risk of fire;

d.      improperly installing the components of the hydraulic draw press, and related components and appurtenances;

e.      failing to correct the improper installation of such components during subsequent maintenance and inspections;

f.      failing to properly train and oversee its employees regarding the proper means, methods and materials used for the installation of Press 761, and related components and appurtenances;

g.      failing to warn at the time of sale, and thereafter, that the connection assembly could malfunction and catastrophically leak hydraulic fluid in this manner with the potential to ignite and cause the fire;

h.      failing to warn at the time of sale, and thereafter, that the hydraulic system, and related components and appurtenances, could not adequately handle the hydraulic fluid to avoid a catastrophic leak;

i.      failing to assess the risks and/or analyze the hazards of positioning and mounting the reservoir, pump and connection assembly in the crown on top of the press above heated parts and communicate those risks and/or hazards to Plaintiff Colfor;

j.      misrepresenting that the hydraulic draw press, and related components and appurtenances, included all elements necessary to make it safe;

k.      misrepresenting that the hydraulic draw press, and related components and appurtenances, as installed was safe and fit for use;

l.      misrepresenting that the hydraulic draw press, and related components and appurtenances, could be safely operated in the setup and form it was in at the Malvern Plant; and

m.      being otherwise negligent and failing to act as a reasonable-prudent party would under the same or similar circumstances.

151.    Each of the above referenced acts and omissions, separately or in combination with others, constitutes negligence on the part of Defendants John Does and is a direct and proximate cause of the damages and losses suffered by Plaintiffs in an amount to be determined at trial.

## COUNT XXII – BREACH OF WARRANTY
## ALL PLAINTIFFS V. JOHN DOE DEFENDANT

152.　Plaintiffs incorporate by reference the paragraphs of this Complaint above and below as if fully set forth herein.

153.　John Doe Defendants warranted that their respective components and appurtenances related to Press 761 were merchantable, fit and safe for the ordinary and particular purpose for which the products were sold, distributed, installed and/or supplied.

154.　The aforesaid warranties were breached by John Doe Defendants because the components and/or appurtenances did not conform to representations made, were not merchantable nor fit and safe for the ordinary and particular purpose for which they were sold, distributed, installed and for the application at issue and was not free from defect.

155.　As a direct and proximate result of the aforesaid breach of warranties, Plaintiffs sustained damages as set forth herein in an amount to be determined at trial.

WHEREFORE, all Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, as follows:

A.　For compensatory damages in an amount in excess of $83,000,000.00;

B.　For punitive and exemplary damages in an amount in excess of $83,000,000.00;

C.　For attorney's fees and expenses in an amount to be proven at or before trial;

D.　For costs of this action;

E.　For pre- and post-judgment interest; and

F.　For any other legal or equitable relief to which Plaintiffs show themselves to be entitled or is otherwise appropriate or authorized by law.

Respectfully Submitted,


BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC


*/s/ Jude B. Streb*
Jude B. Streb (Ohio Bar #0071529)
Justin S. Greenfelder (Ohio Bar #0077924)
4277 Munson St. NW
Canton, Ohio 44718
Telephone: (330) 492-8717
Fax: (330) 492-9625
Email: jstreb@bdblaw.com
      jgreenfelder@bdblaw.com
**Attorneys for Plaintiff**
**Colfor Manufacturing, Inc.**

and

COZEN O'CONNOR


*/s/ Daniel C. Theveny*
Daniel C. Theveny (Ohio Bar #0088838)
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-2000
Fax: (866) 240-3638
Email: dtheveny@cozen.com
**Attorneys for Plaintiffs**
**Zurich American Insurance Company,**
**Westport Insurance Corporation, and**
**Interstate Fire & Casualty Company**
**XL Insurance America, Inc.,**
**HDI Global Insurance Company,**
**National Fire & Marine Insurance Company, and**
**General Security Indemnity Company of Arizona**

and

_/s/ Alan B. McMaster_
Alan B. McMaster (Ohio Bar #0086107)
One Northwestern Plaza
28411 Northwestern Hwy, Suite 600
Southfield, Michigan 48034
Telephone: (248) 203-2743
Fax: (248) 593-5808
Email: amcmaster@dt-law.com
**Attorneys for Plaintiffs**
**ACE American Insurance Company,**
**HDI Global Specialty SE - UK f/k/a Inter-**
**Hannover, and**
**Great Lakes Insurance SE**

Of Counsel:

Erick J. Kirker, Esquire
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-2000
Fax: (215) 701-2172
Email: ekirker@cozen.com
**Attorney for Plaintiffs**
**Zurich American Insurance Company,**
**Westport Insurance Corporation, and**
**Interstate Fire & Casualty Company**

        And

Samuel J. Pace, Jr., Esquire
Stephen M. Winning, Esquire
Dugan Brinkmann Maginnis and Pace
9 Presidential Boulevard, Suite 100
Bala Cynwyd, Pennsylvania 19004
Telephone: (215) 563-3500
Fax: (215) 563-5610
Email: sjpace@dbmplaw.com ; swinning@dbmplaw.com
**Attorneys for Plaintiffs**
**XL Insurance America, Inc.,**
**HDI Global Insurance Company,**
**National Fire & Marine Insurance Company, and**
**General Security Indemnity Company of Arizona**

## JURY DEMAND ENDORSEMENT

All Plaintiffs hereby demand a trial by jury composed of the maximum number of jurors allowed by law.

/s/ Jude B. Streb
JUDE B. STREB (#0071529)
JUSTIN S. GREENFELDER (#0077924)

/s/Daniel C. Theveny, Sr.
DANIEL C. THEVENY (#0088838)

/s/ Alan B. McMaster
ALAN B. McMASTER (#0086107)

4857-4166-2259, v. 4