IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| COLFOR MANUFACTURING, INC., *et al.*, <br><br>      **Plaintiffs,**<br><br>      v.<br><br>MACRODYNE TECHNOLOGIES, INC., *et al.*,<br><br>      **Defendants.** | CASE NO: 5:22-cv-1658<br><br>Judge Dan Aaron Polster<br><br><u>**OPINION AND ORDER**</u> |

Before the Court is Defendant Bosch Rexroth Canada Corp.'s ("Bosch") Motion for Summary Judgment on Contractual Limitation of Liability. ECF Doc. 65. On September 30, 2024, Plaintiff[1] Colfor Manufacturing, Inc. ("Colfor") filed its opposition brief. ECF Doc. 68. Bosch filed its reply brief on October 14, 2024. ECF Doc. 71. For the reasons explained below, the Court DENIES Bosch's motion for summary judgment without prejudice.

**I.    Relevant Facts**

Colfor owned a metal forming plant in Ohio, whereupon Colfor manufactured driveline and metal forming products for various industries. ECF Doc. 21, ¶¶ 24-25. Defendant Macrodyne Technologies, Inc. ("Macrodyne") manufactures heavy-duty hydraulic presses. *Id.*, ¶ 26. Bosch manufactures hydraulic systems and related components. *Id.*, ¶ 31. In 2016, Colfor contracted to purchase a hydraulic press ("Press 761") from Macrodyne. Press 761 included a hydraulic system

---

[1] There are multiple plaintiffs in the instant case. The other plaintiffs— Zurich American Insurance Company; XL Insurance America, Inc.; Westport Insurance Corporation; Interstate Fire & Casualty Company; HDI Global Insurance Company; National Fire & Marine Insurance Company; General Security Indemnity Company of Arizona; ACE American Insurance Company; HDI Global Specialty SE – UK; and Great Lakes Insurance SE (collectively, "Insurance Plaintiffs")—are parties enforcing their subrogation rights. The Insurance Plaintiffs, when appropriate, stand in the shoes of their insured, Colfor.

made by Bosch. *Id.*, ¶¶ 27, 30.

Colfor sent its initial purchase order for Press 761 to Macrodyne on May 17, 2016. ECF Doc. 65-3, PageID 655. This draft purchase order contained Colfor's standard terms and conditions. ECF Doc. 68 at 7. On May 19, 2024, Macrodyne emailed Colfor a copy of the Macrodyne Warranty as well as its comments on the draft purchase order's terms and conditions. ECF Doc 24, Ex. D. Negotiations between Colfor and Macrodyne continued over the next few weeks. During those negotiations, Macrodyne sent Colfor a memorandum specifically outlining Macrodyne's objections to Colfor's standard terms and conditions ("Macrodyne Memorandum"). *Id.*, Ex D (language of email); *id.*, Ex. B (language of memorandum). In that memorandum, Macrodyne explicitly stated that it could not agree to the warranty and remedies provisions of Colfor's terms and conditions. Specifically, Macrodyne said:

> 9. WARRANTY
>
> We cannot agree to this clause. The warranty for the equipment is strictly in accordance with our New Equipment Limited Warranty, Form F301 [("Macrodyne Warranty")].
>
> [. . .]
>
> 21. REMEDIES
>
> We cannot agree to this clause. Our liability is strictly limited to the equipment supplied. Specifically, it is understood that any claim for damages that have not occurred to the goods supplied (eg. [sic] loss of production and/or profit) shall be excluded.

*Id.*, Ex. B. Macrodyne provided Colfor with a copy of the Macrodyne Warranty during these negotiations for Press 761. ECF Doc. 64-1, PageID 612-13. In relevant part, the Macrodyne Warranty states:

> 2.2    Buyer's sole and exclusive remedy under this warranty shall be limited to the repair or exchange of warranted products at Macrodyne's option [. . .].
>
> 2.4    Equipment and accessories not of Macrodyne's manufacture but supplied

2

> by Macrodyne are warranted to the extent of the original manufacturer.
>
> 2.5 Macrodyne Technologies Inc. does not warrant vendor or customer supplied items but agrees to transfer the original manufacturer's warranty if transferable.
>
> 2.7 Special, incidental, consequential or other damages are expressly excluded. Macrodyne Technologies Inc., its agents or subcontractors shall not be liable for consequential damages or contingent liabilities, whether direct or indirect and whether or not resulting from, or contributed to by default or negligence. Excluded damages include, but are not limited to, loss of life, personal injury, loss of crops, loss due to fire or water damage, loss of business income, downtime costs and trade or other commercial loss arising out of the failure of the product. Macrodyne Technologies Inc. will in no event be liable for any sum in excess of the price received for the specific component for which liability is claimed or associated.

ECF Doc. 24, Ex. C, PageID 194. The Macrodyne Warranty additionally notes that "[t]his warranty is expressly in lieu of any other warranties expressed or implied, including any warranty of merchantability or fitness for a particular purpose." *Id.*

The final agreement ("PO 3831") between Colfor and Macrodyne was concluded on June 7, 2016. ECF Doc. 24, Ex. A, PageID 178. The first page of PO 3831 states that the agreement incorporates "[a]pplicable exceptions to the standard terms and conditions . . . in accordance with the mutually agreed document titled 'Comments re AAM Purchase Order No. MA003831-June2-16.pdf.'"[2] *Id.* This language was inserted in PO 3831 at the express agreement of both Colfor and Macrodyne. *See id.*, at Ex. D, PageID 199-201.

Subsequently, Macrodyne issued a purchase order to Bosch for a Hydraulic Power Unit ("HPU"). The HPU was intended as, and ultimately became, a component of Press 761. ECF Doc. 65, PageID 623-24; ECF Doc. 65-5. In return, Bosch submitted to Macrodyne a quotation for the HPU. ECF Doc. 65-6. Both the purchase order and the quotation for the HPU expressly noted that

---

[2] It is never explicitly stated by any party that the Macrodyne Memorandum, ECF Doc. 24, Ex. B, is the same document that is identified in PO 3831 as "Comments re AAM Purchase Order NO. MA003831-June2-16.pdf." However, it is apparent from the filings that the parties treat these documents as one and the same. Therefore, the Court will do the same.

the applicable warranty for the HPU would be Bosch's standard warranty policy ("Bosch Warranty"). *See* ECF Doc. 65-5, PageID 680; ECF Doc. 65-6, PageID 685. The Bosch Warranty contained its own provisions limiting liability and excluding damages. In relevant part, it states:

> 2.9    Buyer's sole and exclusive remedy under this warranty shall be limited to the repair or exchange of warranted products at Bosch Rexroth Canada's option FCA point of original shipping.
> [. . .]
> 2.13    Special, incidental, consequential, or other damages are expressly excluded. Bosch Rexroth Canada shall not be liable for consequential damages or contingent liabilities including, but not limited to, loss of life, personal injury, loss of crops, loss due to fire or water damage, loss of business income, downtime costs and trade or other commercial loss arising out of the failure of the product. Bosch Rexroth Canada will in no event be liable for any sum in excess of the price received by it for the product for which liability is claimed or associated.

ECF Doc. 65-7, PageID 687. Macrodyne and Bosch ultimately contracted for the HPU that was included in Press 761.

On September 22, 2020, a massive fire caused catastrophic damage to Colfor's Ohio plant. The fire destroyed the buildings and nearly all of the equipment contained therein. ECF 68, PageID 999. The fire began in the area around Press 761. ECF Doc. 21, ¶ 45; ECF Doc. 46, ¶ 45. Colfor alleges that the root cause of the fire was a defect in the recirculating hydraulic loop of the main HPU for Press 761. ECF Doc. 21, ¶¶ 46-53.

## II.    Procedural History

Colfor filed their complaint in this Court on September 16, 2022, ECF Doc. 1, and an amended complaint on October 28, 2022, ECF Doc. 21.[3] The amended complaint lists four named defendants, inclusive of Macrodyne and Bosch, as well as ninety-nine John Doe defendants. Colfor alleges a total of twenty-two claims across all defendants. The following claims are applicable to

---

[3] The amended complaint is substantially the same as the initial complaint. The only meaningful difference is that Colfor substituted the proper corporate entity, Bosch Rexroth Canada Corp., for one of the defendants, Bosch Rexroth Corporation.

Bosch: 1) State Law Strict Liability – Design Defect; 2) State Law Strict Products Liability – Manufacturing Defect; 3) State Law Strict Products Liability – Defect Due to Nonconformance with Representation; 4) State Law Negligence; and 5) State Law Breach of Warranty. *Id.*

Macrodyne filed its answer to the amended complaint on December 16, 2022. At the same time, Macrodyne also filed a counterclaim against all Plaintiffs for declaratory judgment limiting its liability and potential damages. ECF Doc. 24, PageID 168-74. On February 1, 2023, Bosch filed a partial answer to the amended complaint, as well as a partial motion to dismiss for failure to state a claim. ECF Docs. 35-36. Following briefing on the partial motion, this Court denied Bosch's partial motion to dismiss. ECF Doc. 45. In accordance with that order, Bosch filed an amended answer on April 24, 2023. ECF Doc. 46.

On August 30, 2024, Macrodyne filed a motion for summary judgement on its counterclaim for declaratory judgment. ECF Doc. 64. On the same day, Bosch filed its own motion for summary judgement on the issue of contractual limitation of liability and exclusion of damages, contained in Macrodyne's counterclaim. ECF Doc. 65. Colfor filed briefs in opposition to both motions on September 30, 2024. ECF Docs. 67-68. On October 11, 2024, prior to the deadline for filing a reply, Macrodyne filed a notice withdrawing its motion for summary judgment, stating that it had reached a settlement with Colfor. ECF Doc. 69. Bosch filed a timely reply in support of its motion for summary judgment on October 14, 2024. ECF Doc. 71. The matter is now ripe for ruling.

### III. Law & Analysis

#### A. Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory and unsupported allegations, rooted in speculation are insufficient to create a genuine dispute of material fact for trial." *Gunn v. Senior Servs of N. Ky.*, 632 F. App'x 839, 847 (6th Cir. 2015) (citing *Bell v. Ohio St. Univ.*, 351 F.3d 240, 253 (6th Cir. 2003)); *see also* Fed. R. Civ. P. 56 (e)(2). As the Supreme Court has explained, "[the non-moving party] must do more than simply show that there is metaphysical doubt as to the material facts." *Matsushita Elec., Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed R. Civ. P. 56(c), (e).

### B. Ohio Law Interpretation of Contracts

A federal court sitting in diversity applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Because this Court is

6

located in Ohio, it must apply Ohio law to PO 3831 and the Bosch Warranty.[4] Ohio has adopted the Uniform Commercial Code in its entirety. *See* O.R.C. §§ 1302.01-98; *Uniform Commercial Code*, Ohio.gov, https://ohio.gov/business/resources/uniform-commercial-code.

### C. The Macrodyne Warranty

#### 1. Is the Macrodyne Warranty a valid part of PO 3831?

Bosch argues that it is covered under the provisions of the Macrodyne Warranty, and further protected by its own warranty as transferred to Colfor through the Macrodyne Warranty. Thus, at the outset, the Court must first determine whether the Macrodyne Warranty is, in fact, part of the final contract between Colfor and Macrodyne.

Ohio law holds that parties may incorporate extrinsic documents by reference into their contract, so long as two requirements are satisfied: 1) "the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt;" and 2) the contract terms "clearly demonstrate that the parties intended to incorporate all or part of the referenced document" into the contract. *HB Martin Logistics, Inc. v. Hissong Group, Inc.*, 233 N.E.3d 150, 156 (Ohio Ct. App. 2023) (internal quotations omitted); *see also Volovetz v. Tremco Barrier Sols., Inc.*, 74 N.E.3d 743, 751 (Ohio Ct. App. 2016*); Bd. of Ed. v. Colaianni Construction, Inc.*, 219 N.E.3d 1021, 1047-48 (Ohio Ct. App. 2023); *Ace American Insurance Co. v. Gerling and Associates, Inc.*, 630 F.Supp.3d 919, 936 (S.D. Ohio 2022). It is insufficient to merely reference the extrinsic document. *See Volovetz*, 74 N.E.3d at 751.

Here, neither Colfor nor Macrodyne disputes that PO 3831 represents a valid, final

---

[4] The Court applies "the law of the state's highest court." *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir. 1995) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938)). "If, however, the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from all relevant data." *Id*. (internal quotation marks and citation omitted). "[A]n intermediate appellate court's judgment that announces a rule of law is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *FL Aerospace v. Aetna Cas. & Sur. Co.,* 897 F.2d 214, 218-19 (6th Cir. 1990) (internal quotation marks and citation omitted).

contract between the two parties. Accordingly, neither disputes that the contract includes language stating that "[a]pplicable exceptions to the standard terms and conditions are in accordance with the mutually agreed document titled 'Comments re AAM Purchase Order No. MA003831-June2-16.pdf.'" ECF Doc. 24., Ex. A. The first prong clearly being satisfied, the Court now turns to the second prong.

Colfor attempts to argue that that there is a "clear lack of consent by Colfor" to the above-mentioned provisions of the Macrodyne Warranty.[5] ECF Doc. 67, PageID 806. Specifically, Colfor asserts that the language of the Macrodyne Memorandum is "convoluted and overly broad, which makes [it] ambiguous" such that "[t]here is no conceivable way Colfor could have agreed to these Comments" as interpreted by the defendants. *Id.*, PageID 807. Therefore, according to Colfor's logic, this language cannot possibly reflect a meeting of the minds to incorporate the Macrodyne Warranty into PO 3831. This is not only a misunderstanding of what language is actually important to this analysis under the second prong, but also a misunderstanding of what actually makes a contract term ambiguous.

The question of intent is not in the terms of the Macrodyne Memorandum; rather, it is in the language of PO 3831 and whether the parties intended to incorporate by reference the terms of the Macrodyne Memorandum (which, in itself, incorporates the Macrodyne Warranty). PO 3831 is the main contract in this case. The Macrodyne Memorandum serves as an addendum to PO 3831. Thus, the question is, when drafting PO 3831, did the parties intend to incorporate the

---

[5] On October 11, 2024, Macrodyne filed a notice withdrawing their motion for summary judgment. ECF Doc. 69. Accordingly, Colfor's response in opposition to Macrodyne's motion is moot. ECF Doc. 67. However, it is impossible to address Bosch's motion—and its argument that the Bosch Warranty transfers to Colfor through the language of the Macrodyne Warranty—without having to address whether the Macrodyne Warranty was properly incorporated into the final contract. To the extent the Court references arguments made by Macrodyne or Colfor in their withdrawn or moot pleadings, it is done exclusively to rule on Bosch's motion. That is, no discussion in this Opinion and Order should be construed as a determination on the merits regarding Colfor's claims against Macrodyne or Macrodyne's counterclaim.

Macrodyne Memorandum as an addendum to PO 3831? And it would be nonsensical to look to the Macrodyne Memorandum for language indicating that the parties intended for it to be part of PO 3831. If a party could add an addendum to a contract simply by stating so in the addendum, then one would expect everyone to attempt to slide in favorable provisions that way. The document that the parties have affirmatively and undisputedly agreed to is where the relevant language is.

To the second point, a contract is only considered ambiguous if the terms in question are susceptible to more than one reasonable interpretation. *See, e.g.*, *Motorists Mut. Ins. Co. v. Ironics, Inc.*, 200 N.E.3d 149, 156 (Ohio 2022). That is, a court construing a contract should give common words their ordinary meaning "unless manifest absurdity results or unless some other meaning is clear from the face or overall contents of the agreement." *Beverage Holdings, LLC v. 5701 Lombardo, LLC*, 150 N.E.3d 28, 31-32 (Ohio 2019) (citing *Cincinnati Ins. Co. v. Anders*, 789 N.E.2d 1094, 1098 (Ohio 2003)). This is a narrow exception, as such a result must be "obvious[ly]" and "*ridiculously* unreasonable, unsound, or incongruous." *Id.* at 33 (emphasis in original) (internal quotations omitted). And when the contractual language is clear, the Court must look "no further than the writing itself to determine the parties' intent." *Id.* at 155 (citing *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978)).

As neither party disputes that the language purporting to incorporate the Macrodyne Memorandum is part of PO 3831, the question then becomes whether that language could have some other clear meaning. The clause referencing the Macrodyne Memorandum is not ambiguous, and nobody has argued that it actually references a different document. This leaves "[a]pplicable exceptions to the standard terms and conditions are in accordance" as the remaining clause to interpret. The "standard terms and conditions" are those contained with PO 3831; that

9

is, Colfor's standard terms and conditions. "Applicable exceptions" suggests that, when there is a conflict between Colfor's standard terms and the language of the Macrodyne Memorandum, it is the Macrodyne Memorandum that will control. *See, e.g.*, *CoMa Ins. Agency, Inc. v. Safeco Ins. Co.*, 526 Fed.App'x 465, 468-69 (6th Cir. 2013) (noting that "Ohio law teaches that a specific contractual term will control a general term where two clauses in a contract appear inconsistent"). Additionally, there is no language suggesting the parties intended to limit the scope of the exceptions in the Macrodyne Memorandum. Overall, nothing about this language, nor any other language contained within the four corners of PO 3831, suggests that the parties may have meant something else in using these words.

Especially given that both Colfor and Macrodyne are sophisticated parties with regards to contract negotiations, it is also difficult to see how this language leads to a "manifestly absurd" result. Mere inequity in the terms or application of a provision does not result in manifest absurdity, and "[i]t is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result." *Beverage Holdings*, 150 N.E.3d at 35 (citing *Foster Wheeler Envireresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997)); *see also Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. Circle, Inc.*, 915 F.2d 986, 991 (5th Cir. 1990) ("Although a business decision may be unwise, imprudent, risky, or speculative, it is not necessarily 'absurd.' We decline to allow contracting parties to escape the unfortunate and unexpected, though not objectively 'absurd,' consequences of a contract by subsequently characterizing their consequences as 'absurd'.").

Because interpreting the "[a]pplicable exceptions to the standard terms and conditions are in accordance" clause does not produce manifestly absurd results, and there is no alternative clear and reasonable reading of the clause, the Court determines that the language is meant to

incorporate all of the Macrodyne Memorandum into PO 3831. With both prongs of the incorporation by reference test being satisfied, this Court concludes as a matter of law that the Macrodyne Memorandum is a valid part of the contract between Colfor and Macrodyne.

### 2. Are the limitations and warranties provisions of the Macrodyne Warranty enforceable as part of PO 3831?

Just because a contract provision is valid, however, does not mean that provision is necessarily enforceable. To that end, Colfor makes two arguments; their first argument is that the provisions are unconscionable. Under Ohio law, the party asserting unconscionability must prove the existence of both procedural and substantive unconscionability. *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 20 (Ohio 2008). That is, the party must show both "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* (quoting *Lake Ridge Academy v. Carney*, 613 N.E.2d 183, 189 (Ohio 1993)). In contrast to contracts between individuals, though, "findings of unconscionability in a commercial setting are rare." *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 639 (Ohio 1989) (internal quotation omitted).

When a court evaluates for procedural unconscionability, it considers factors such as "the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed." *Ashtabula Cty. Airport Auth. v. Rich*, 103 N.E.3d 51, 60 (Ohio Ct. App. 2017). Here, Colfor puts forth no evidence to suggest that it did not understand the contract it was negotiating with Macrodyne, or that it was under undue pressure to sign the contract as quickly as possible. In fact, Colfor admits that it exchanged a number of communications with Macrodyne over the course of several weeks. *See.* ECF Doc. 65-3, PageID 655; ECF Doc 24, Ex. D; ECF Doc. 24, Ex. A, PageID 178. It similarly fails to

11

supply any evidence suggesting that there was a gross disparity in bargaining power between the parties. Colfor first saw a version of the Macrodyne Memorandum on May 19, 2016, and had discussions with Macrodyne over the next few weeks discussing the details of that document. ECF Doc. 24, Ex. D, PageID 197-201. When Macrodyne proposed the language ultimately contained on PO 3831 incorporating the Macrodyne Memorandum, Colfor chose to accept that language verbatim. *Id.* Further, the Macrodyne Memorandum is referred to as the "mutually agreed document" on PO 3831. *Id.*, Ex. A, PageID 178. Colfor has failed to satisfy the procedural unconscionability prong. Accordingly, there is no need for the Court to evaluate for substantive unconscionability, as both prongs are needed for this argument to succeed.

Colfor's second argument is that the provisions fail of their essential purpose. Ohio law states that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in" other sections of the statute, including consequential and incidental damages. O.R.C. § 1302.89, 1302.93. Colfor correctly points out that, under Ohio law, "a limited or exclusive remedy can fail of its essential purpose if it deprives the purchaser of the substantial value of its bargain, leaving the purchase without a remedy." ECF Doc. 67, PageID 815 (citing *WEL Cos. Inc. v. Haldex Brake Prod. Corp.*, 467 F.Supp.3d 545, 563 (S.D. Ohio 2020) (internal quotation omitted)). This can happen in two circumstances: 1) the seller is unwilling or unable to fulfill its obligations, *Goddard v. Gen. Motors Corp.* 396 N.E.2d 761, 764 (Ohio 1979); or 2) the product contained a latent defect such that it was impractical for the plaintiff to take advantage of the remedy, *WEL Cos.*, 467 F.Supp.3d at 563. However, Ohio law also provides that the determination of whether a warranty has failed to fulfill its essential purpose is ordinarily a question for the trier of fact. *See Chemtrol*, 537 N.E.2d at 639-40; *see also Traxler v. PPG Indus., Inc.*, 158 F.Supp.3d 607, 614 (N.D. Ohio 2016). There is not enough discovery at

this point for the Court to determine whether Colfor has met its burden for either scenario. Therefore, it cannot, as a matter of law, determine that the limitations and warranties provisions have failed of their essential purposes.

Because whether a provision fails of its essential purpose is a question of fact for the jury and cannot be determined at this time, this Court need not address the arguments on whether Bosch is a subcontractor or third-party beneficiary under PO 3831 and the Macrodyne Warranty.

### D. The Bosch Warranty

In addition to arguing that it is covered by the limitations of the Macrodyne Warranty, Bosch also asserts that it is protected by the limitations of the Bosch Warranty. Specifically, Bosch argues that Section 2.4 of Macrodyne's Warranty ("Equipment and accessories not of Macrodyne's manufacture but supplied by Macrodyne are warranted to the extent of the original manufacturer") serves to transfer the Bosch Warranty to Colfor. In response, Colfor argues that they never reviewed the Bosch Warranty and never consented to it, so therefore it cannot apply to them. Yet, both parties fail to provide any applicable case law supporting their arguments. In fact, only one case is cited between Colfor and Bosch, but the fact pattern is too dissimilar to be applicable in this case. Further, whether Colfor ever reviewed the Bosch Warranty or had it supplied to them is a factual dispute, making it inappropriate for summary judgment.

However, the Court need not parse this issue; whatever the outcome may be, Bosch's motion for summary judgment based on the Bosch Warranty fails for the same reason it fails on the Macrodyne Warranty. That is, whether the limitations and warranties provisions of the Bosch Warranty fail of their essential purposes is a factual question for the jury.

## IV. Conclusion

Based on the foregoing, the Court DENIES Bosch's motion for summary judgement without prejudice.

**IT IS SO ORDERED.**

Dated: November 1, 2024                    */s/ Dan Aaron Polster*
                                            **Dan Aaron Polster**
                                            **United States District Judge**